UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

In re:

SAMMY VELA,

   Debtor.
_____/

KAPITUS SERVICING INC, F/K/A
COLONIAL FUNDING NETWORK, AS
SERVICING AGENT FOR YELLOW
STONE CAPITAL AND TRUST CAPITAL
FUNDING,

   Plaintiff,
v.

SAMMY VELA,

   Defendant.
_____/

Chapter 7

Case No.: 19-34286

Ad. Pro. No. 19-03671

## JUDGMENT

Before the Court is the Motion for Default Judgment (the "Motion") filed by plaintiff Kapitus Servicing Inc., f/k/a Colonial Funding Network, Inc., as servicing agent for Yellow Stone Capital and Trust Capital Funding ("Kapitus" or the "Plaintiff") pursuant to rule 7055 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of default judgment against defendant Sammy Vela ("Vela" or the "Defendant"). Based on the Motion and the *Affidavit of David Wolfson In Support of Default Judgment* filed with the Motion, this Court hereby:

FINDS AND DETERMINES:[1]

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. *See* Fed. R. Bankr. P. 7052.

1

A. On August 4, 2019 (the "Petition Date"), Vela filed a petition under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

B. On November 12, 2019, Kapitus commenced the above-captioned adversary proceeding against Vela by filing its complaint to determine non-dischargeability of its debts owed by Vela (the "Complaint") [Ad. Doc. No. 1].

C. On December 4, 2019, the summons and Complaint was served on Vela. [Ad. Doc. No. 6]

D. Vela was required to plead or otherwise defend in response to Plaintiff's Complaint by January 3, 2020. Vela failed to plead or otherwise defend in response to Plaintiff's Complaint as required by the Bankruptcy Rules or the Federal Rules of Civil Procedure (the "Federal Rules").

E. On January 10, 2020, Kapitus filed a Request for Entry of Default [Ad. Doc. No. 7].

F. On January 17, 2020, the clerk of the Court entered a default [Ad Doc. No. 8].

G. Vela has failed to appear in this action, and no counsel or other representatives have entered appearances herein on behalf of Vela.

H. In 2016, Vela executed an application for a merchant cash advance with Plaintiff (the "Application") in connection with certain Restaurants (defined below).

I. Vela subsequently conducted several pre-funding phone interviews between August and December 2016. During these phone interviews, Vela represented that he was up to date on the rent for the Restaurants, current on his taxes, had no other accounts with other

merchant cash advance providers, and that he was not in arrears on any accounts with financial institutions.

J.      Vela entered into five Merchant Cash Advance Agreements for the purchase and sale of future receivables of (i) Sammy's Grill, LLC d/b/a Stadia Bar and Grill ("Sammy's 1"), (ii) Stadia Bar & Grill Licensing Co, LLC d/b/a Stadia Sports Grill ("Stadia"), (iii) Sammy's Grill LLC 2 d/b/a Sammy's Sports Grill 2 ("Sammy's 2"), (iv) Sammy's Grill LLC 3 d/b/a Sammy's Sports Grill 3 ("Sammy's 3"), (v) Sammy's Grill LLC 4 d/b/a Sammy's Sports Grill 4 ("Sammy's 4"), and (vi) Sammy's Grill LLC 5 d/b/a Sammy's Sports Grill 5 ("Sammy's 5" and collectively, with Sammy's 1, Sammy's 2, Sammy's 3 and Sammy's 4, the "Merchants" or "Restaurants"), with the first executed on August 16, 2016, the second and third both executed on October 26, 2016, the fourth on November 9, 2016, and the fifth on December 14, 2016 (the "Agreements"). Vela entered into each of these Agreements while representing himself as the owner and authorized representative of each of the Restaurants.

K.      Pursuant to the Agreements, Plaintiff purchased $830,195.00 of future accounts, monetary payments, and other general receivables generated by the Restaurants (the "Receivables").

L.      By entering into the Agreement, the Debtor agreed that "[t]he Purchased Amount shall be paid to Funder by Merchant's using and irrevocably authorizing only one car processor acceptable to Funder ("Processor") to remit to or for the benefit of Funder the percentage specific below (the "Specified Percentage") of Merchant's settlement amounts due from each car isser with respect to the Receipts . . ." Agreements, at p. 1.  Further, the Debtor agreed to that "Merchant appoints Funder as "Acting Agent" over the Bridge / Control Account and shall

3

instruct Processor to designate the Bridge / Control Account as the deposit account for all of Merchant's customers' card transactions.   Agreements, p. 2.

      M.      By entering the Agreements, Debtor represented, warranted, and covenanted the following:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** [The Restaurants] and each Owner/Guarantor represents, warrants and covenants that as of this date and during the term of the Agreement:
>
> **2.1 Financial Condition and Financial Information.** Its financial statements, copies of which have been furnished to FUNDER, and any financial statements furnished to FUNDER hereafter, fairly represent the financial condition of Merchant and each Owner/Guarantor at such dates, and since those dates there has been no material adverse change, financial or otherwise, in such condition or in the operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise FUNDER of any material adverse change in its financial condition, operation or ownership.
>
> **2.2 Governmental Approvals.** Merchant is and will remain in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct business in which it is presently engaged.
>
> **2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to execute this Agreement and to incur and perform the obligations under this Agreement, all of which have been duly authorized.
>
> …
>
> **2.5 Merchant Processing Agreement and Arrangements.** Without FUNDER's prior written consent, Merchant will not: (i) change the card processor through which the Receipts are settled from Processor to another card processor; (ii) permit any event to occur that could cause diversion of any of Merchant's card transactions from Processor to another processor; (iii) change its arrangement with Processor or amend the Merchant Processing Agreement in any way that is adverse to FUNDER; (iv) add card processing terminals; (v) use multiple card processing terminals; (vi) change its financial institution or bank account(s) (including, if applicable, the Bridge/Control Account); (vii) take any other action

that could have any adverse effect upon Merchant's obligations under this Agreement or FUNDER's interest in the Receipts; or (viii) make any action, fail to take any action, or offer any incentive—economic or otherwise—the result of which could be to discourage the use of cards that are settled through Processor, or to induce any customers to pay for Merchant's services with any means other than cards that are settled through Processor, or permit any event to occur that could have an adverse effect on the use, acceptance, or authorization of cards for the purchase of Merchant's services and products.

...

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

…

**2.9 No Bankruptcy or Insolvency.** Merchant and Owner/Guarantors represent that they are not insolvent and neither Merchant nor any Owner/Guarantor has filed any petition for bankruptcy protection under Title 11 of the United States Code, no involuntary petition for bankruptcy has been brought or is pending against Merchant or any Owner/Guarantor, neither Merchant nor any Owner/Guarantor has admitted in writing its inability to pay its debts or made a general assignment for the benefit of creditors, and no other proceeding has been instituted by or against Merchant or any Owner/Guarantor seeking to adjudicate it insolvent or seeking reorganization, arrangement, adjustment, or composition of it or its debts. Merchant does not anticipate filing any such bankruptcy petition and is not aware and has no reason to believe that any such bankruptcy petition or other proceeding will be: filed or brought against it or any Owner/Guarantor.

**2.10 Other Financing.** Merchant shall not enter into any arrangement, agreement or commitment that relates to or involves Receipts, whether in the form of a purchase (such as a merchant cash advance) of, a loan against, or the sale or purchase of credits against, any Receipts, cash deposits or future card or mobile payment sales with any party other than FUNDER without its written permission.

**2.11 Unencumbered Receipts.** Merchant has good and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights

or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of, FUNDER.

...

**2.17 Bridge/Control Account.** If Merchant is required to open a Bridge/Control Account, (i) Merchant will not, unless otherwise directed in writing by FUNDER, take any action to cause the Specified Percentage of the settlement amounts to be settled or delivered to any account other than the Bridge/Control Account and (ii) Merchant will at all times maintain the Minimum Balance in the Bridge/Control Account.

Agreements, at pp. 2–3.

N. In executing the Agreements, Vela agreed that all information provided in forms and recorded interviews was "true, accurate, and complete in all respects", and the Agreements further emphasized that "**ANY MISREPRESENTATION MADE BY [THE RESTAURANT] OR [VELA] IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FUNDING.**" *See* Agreements, p. 1 (emphasis in original).

O. During the pre-funding calls and/or in the Agreements, Vela made the following material fraudulent representations and/or material omissions of fact, including:

a) Despite executing the August 16, 2016 Agreement as an authorized representative of Stadia (one of the Restaurants), Vela had no relationship with Stadia, and had no authority to sign on behalf of that entity.

b) On the pre-funding calls, Vela represented to Kapitus that Vela and the Restaurants were current with their taxes, including federal, state, and payroll. However, the IRS filed tax liens against Sammy's 1 in April 2015, against Sammy's 2 in May 2017, against Sammy's 3 in August 2017, and against Sammy's 4 in June 2018. Vela falsely and fraudulently misrepresented that he and the Restaurants were current on their tax obligations.

    c) On the pre-funding calls, Vela represented to Kapitus that Vela and the Restaurants were current on their lease obligations.  However, based on the Debtor's schedules, certain of the Restaurants were behind on their lease obligations when Vela made these representations.  Vela falsely and fraudulently misrepresented that he and the Restaurants were current on their lease obligations.

    d) On the pre-funding calls, Vela represented to Kapitus that Vela and the Restaurants did not have a balance with any other merchant cash advance provider or financial institution, and were not in delinquency on any balances, loans, or any other financial obligations.  However, based on Vela's schedules, certain of the Restaurants had financings with other merchant cash advance providers.  If Vela and the Merchant had these financings prior to entering into the Agreements, then the Merchant failed to sell unencumbered receipts contraty to the representations contained in section 2.11 of the Agreements.  If Vela and the Merchant obtained these financings after entering into the Agreements, then Vela an the Merchant breached section 2.10 of the Agreements because it did not obtain Kapitus's consent prior to entering into these other financings.

    e) In the Agreements, Vela falsely and fraudulently represented to Kapitus that he and the Restaurants had no intention of filing for bankruptcy and that he and the Restaurants were not insolvent.  However, almost immediately after executing each of the agreements and Settlement Agreements (defined below), Vela defaulted on his obligations.

    P.    Vela made material fraudulent representations and/or material omissions of fact that induced Kapitus to provide money to the Restaurants and Vela.

Q. Kapitus reasonably and justifiably relied on the Debtor's material fraudulent representations and/or material omissions in the Agreements and the pre-funding calls in connection with providing money to the Restaurants and Vela.

R. Since August 2016, when Vela executed the first of the Agreements, and subsequently when he entered into the remaining Agreements, Vela was familiar with the requirement that the Restaurants not change the processor without Plaintiff's written consent. Kapitus relied on these provisions when agreeing to fund. Notwithstanding his knowledge of this requirement, less than three months after Kapitus entered into the Agreements, the Restaurants and Vela, secretly and without Kapitus's knowledge or written consent, changed the processor. By this unauthorized change of the processor, the Restaurants and Vela converted the Receivables that Kapitus purchased from the Restaurants. Due to Vela's secret and unauthorized change of the processor, Vela knowingly and improperly deprived Kapitus of the Receivables it purchased, interfered with Kapitus's right to collect the Receivables from and after the date of the change and, accordingly, Kapitus was not able to collect any of the Receivables from and after that time.

S. Following the default under the Agreements, Kapitus entered into a settlement agreement with Vela and the Restaurants dated on or about December 29, 2017 (the "December 2017 Settlement Agreement"). Pursuant to the December 2017 Settlement Agreement, Vela and the Restaurants acknowledged that a total outstanding balance $504,218.29 remained due and owing pursuant to the Agreements. Almost immediately thereafter, Vela and the Restaurants defaulted on the December 2017 Settlement Agreement.

T. Subsequently, Kapitus filed suit against the Debtor and the Restaurants in the amount of $486,918.23 plus costs and interest. Thereafter, on or about August 9, 2018, Kapitus

entered into a Stipulation of Settlement (the "August 2018 Settlement Agreement" and together with the December 2017 Settlement Agreement, the "Settlement Agreements").

U. Vela and the Restaurants again defaulted, and failed to pay amounts owed under the August 2018 Settlement Agreement. Plaintiff filed suit under the August 2018 Settlement Agreement and obtained a default judgment in New York State in the amount of $559,982.97, plus interest accruing since April 22, 2019. Accordingly, the Restaurants and Debtor are jointly and severally liable to Plaintiff for the amount of $559,982.97, plus interest accruing since April 22, 2019, along with attorneys' fees and costs. As of August 4, 2019, the total claim with interest is $574,481.14.

V. Vela signed the December 2017 Settlement Agreement as the "Owner" of Stadia and the other Restaurants. Vela signed the August 2018 Settlement Agreement as the "Managing Member" of Stadia and the other Restaurants. However, Vela was not the owner, managing member, or authorized representative of Stadia at any of these times.

W. Based on Vela's misrepresentations and actions in connection with the Agreements and Settlement Agreements, Vela (i) obtained money by false pretenses, false representations, or actual fraud, (ii) obtained money using a materially false written statement that Vela caused to be made or published with intent to deceive respecting his or the Restaurant's financial condition on which Kapitus reasonably relied, (iii) engaged in fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, and/or (iv) caused willful and malicious injury to Kapitus. Accordingly, the debt owed by Vela to Kapitus is non-dischargeable, and Kapitus is entitled to an award of damages in the amount of $574,481.14 and interest accruing since August 4, 2019, plus attorneys' fees and costs incurred.

X. By failing to answer the Complaint, Vela is in default under rule 55 of the Federal Rules of Civil Procedure, as incorporated by rule 7055 of the Federal Rules of Bankruptcy Procedure and, accordingly, Kapitus is entitled to entry of default judgment against Vela.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that:

1. Final judgment is entered in favor of Kapitus and against Vela in the above-captioned adversary proceeding.

2. The judgment claim against Vela is non-dischargeable in the instant bankruptcy case, in any other chapter under title 11 of the United States Code to which this case may be converted, and in any future bankruptcy case filed by or against Vela.

3. The non-dischargeable judgment claim includes the following components:

> Judgement Awarded - $559,982.97
> Interest @ 9% (New York Legal Rate)
> From 4/22/19 to 8/4/19 - $14,498.17
> Total Claim - $574,481.14 *as of 8/4/2019*

4. Accordingly, plaintiff Kapitus is hereby awarded a final judgment in the amount of $574,481.14, plus interest accruing at nine percent per annum from August 4, 2019, against defendant Vela. This final judgment is NONDISCHARGEABLE pursuant to sections 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.

5. The judgment amount shall accrue interest at the applicable federal judgment interest rate after the date of this judgment. 28 U.S.C. §1961.

6. If Plaintiff incurs any costs and expenses related to enforcing its rights under this final judgment, including without limitation any costs and expenses of attorneys, Plaintiff shall have the right to collect such costs and expenses from Defendant as part of the final judgment.

7. This final judgment may only be modified by a revised final judgment entered on the docket in the above-referenced bankruptcy case; provided that, the parties may agree to

amend the payment terms in this final judgement by a written agreement signed by both parties. No oral modifications are permitted and any allegation that the final judgment was modified orally will be disregarded as not treated as evidence.

8. The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from or related to this final judgment.

Dated: _____

_____
HONORABLE EDUARDO V. RODRIGUEZ
UNITED STATES BANKRUPTCY JUDGE